# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 13-CV-1391 (JFB) (GRB)

———————————

## PICK QUICK FOOD, INC.,

Petitioner,

VERSUS

## UNITED FOOD AND COMMERCIAL WORKERS LOCAL 342,

Respondent.

———————————

**MEMORANDUM AND ORDER**
July 10, 2013

———————————

JOSEPH F. BIANCO, District Judge:

Petitioner Pick Quick Food, Inc. ("Pick Quick" or "petitioner") filed an action in New York State Supreme Court, County of Nassau seeking an interim and permanent stay of the arbitration that respondent United Food and Commercial Workers, Local 342 (the "Union" or "respondent") requested on behalf of grievant Anthony Colarusso ("Colarusso" or "grievant"). The state court granted petitioner's request for a stay. Respondent then removed this matter to federal court. Respondent now brings a motion to dismiss the complaint, to vacate the stay, and to compel petitioner to proceed to arbitration. For the following reasons, the Court concludes that the stay should be vacated and that the parties should proceed to arbitration.

In particular, the Union has filed a grievance and commenced an arbitration proceeding on behalf of Colarusso, alleging that he was not provided with certain overtime and premium pay or other entitlements, including vacation, personal, and sick days, in alleged violation of the Collective Bargaining Agreement ("CBA") between the Union and Pick Quick. Pick Quick asserts that arbitration is unwarranted because, although Colarusso participates in the Union's medical and pension plans as a member of the Union, the CBA sets forth those employment classifications covered by the collective bargaining unit, which, according to petitioner, does not include supervisors like Colarusso; for this reason, petitioner argues that Colarusso's grievance is not subject to arbitration. However, it is uncontroverted that (1) Colarusso is a member of the Union and an employee of Pick Quick; (2) the CBA in question covers the parties herein and members of the Union who are employees; and (3) the CBA's broad arbitration clause clearly states that all

disputes regarding the interpretation, application, or enforcement of any of the provisions of the CBA shall be resolved by arbitration (except for disputes concerning employer contributions to the funds affiliated with the Union, which is not at issue here). Furthermore, the language of the broad arbitration provision does not, on its face, limit itself solely to disputes between the Union and employees of Pick Quick and/or bargaining unit members; rather, the language appears to include disputes involving the Union and a Union member and Pick Quick. In other words, the parties have agreed that any disputes regarding the interpretation of provisions of the CBA – including whether a union member is a supervisor under the Agreement and whether such supervisory status causes him to be exempt from the CBA – should be resolved by an arbitrator.

Thus, the case must proceed to arbitration. The Court makes no ruling at this juncture regarding respondent's motion to dismiss the complaint, pending the results of the parties' forthcoming arbitration.

## I. Background

### A. Facts

Petitioner operates several retail supermarket stores in the counties of Nassau, Brooklyn, and the Bronx. (Pet'r Mem. of Law in Opp'n to Resp't's Mot. to Dismiss Compl., Vacate Stay and Compel Arbitration ("Pet'r's Opp'n") at 2.) Respondent serves as the exclusive bargaining representative for employees working in the meat and seafood departments of petitioner's stores. (*Id.*) At all times relevant to this dispute, both petitioner and respondent were parties to a CBA, the application and terms of which are presently in dispute.

Of particular import to the parties is the scope of Article I to the CBA. It states, *inter alia*, as follows:

> The Employer recognizes the Union as the exclusive bargaining representative of all its employees in its stores herein, engaged in the cutting, wrapping and selling of all fresh and smoked meat, poultry, fish and such products customarily handled in the Meat Department at retail in all its retail stores or supermarkets, and such additional classifications previously recognized by the Employer (as set forth in Schedule "A" herein), for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment or other better conditions of employment.

(*Id.* (citing Pet'r's Opp'n Aff. of Benjamin J. Levine ("Levine Aff.") Ex. 1).) "Schedule A," as referenced in Article I of the CBA, lists the following classifications of employees: a meat department head, journeyman meat cutter, apprentice meat cutter, delicatessen seafood department head, weigher and wrapper delicatessen and seafood clerks. (*Id.* (citing Levine Aff. Ex. 1).)

Colarusso first began working for Pick Quick on September 12, 1983 as a meat cutter. (Pet'r's Opp'n at 3.) Over his near thirty years with Pick Quick, Colarusso worked in various capacities in its meat departments. (*Id.*) The position of greatest interest to the parties, for purposes of this dispute, is Colarusso's assumption of a supervisory position in the meat department, which occurred on July 24, 1990. (*Id.* (citing Levine Aff. ¶ 6); Resp't Mem. of Law in Supp. of Mot. to Dismiss Compl., Vacate Stay and Compel Arbitration ("Resp't Mem.") at 3.) The parties each refer to

Colarusso's elevated position as that of "meat supervisor." (*See* Resp't Mem. at 3-4; Pet'r's Opp'n at 3-4.) However, while the parties appear to be in agreement that Colarusso held the title of "meat supervisor" during his time with Pick Quick, the parties dispute whether it is the role of the Court or the arbitrator to determine whether Colarusso was a supervisor for purposes of the CBA and, if so, whether a holding of such a supervisory position has the effect of exempting him from the CBA.

## B. Procedural History

Petitioner initially filed this action in the Supreme Court of New York, Nassau County, and on March 18, 2013, respondent removed the action to this Court. On April 5, 2013, respondent requested a pre-motion conference in anticipation of moving to dismiss plaintiff's complaint, as well as cross-moving to compel arbitration and vacate the state court's imposed stay. The pre-motion conference was held on May 1, 2013. On May 21, 2013, respondent filed its motion to dismiss, vacate stay, and compel arbitration. Petitioner submitted its opposition on June 5, 2013; respondent replied on June 13, 2013. On June 18, 2013, this Court heard oral argument and, following petitioner's request, allowed the parties to subsequently submit a letter supplementing those issues addressed during oral argument. On June 25, 2013, petitioner submitted its letter, and on June 28, 2013, respondent submitted its response.

The Court has fully considered the parties' submissions.

## II. THE PARTIES' ARGUMENTS

The Court briefly summarizes the parties' respective arguments. Respondent asserts that the issue of whether Colarusso constitutes a beneficiary under the CBA and/or whether his supervisory status causes him to be exempt from the CBA's terms is a determination best left to the arbitrator. This is so, respondent contends, because (1) the parties had a valid CBA with one another; (2) Colarusso was an employee of Pick Quick's and a member of the Union, thus falling under the CBA's purview; (3) the CBA contains a broad arbitration clause; and (4) pursuant to the clause's broad language, disputes concerning the CBA's terms, such as this one, must proceed to arbitration. (*See* Resp't Mem. at 1-4.)

Petitioner argues to the contrary, claiming that because Colarusso held a position as a "meat supervisor," he was not a member of CBA's "bargaining unit"; therefore, the terms and conditions of his employment are not governed by the CBA, and any questions concerning such are to be addressed by the Court. (*See* Pet'r's Opp'n at 1-2, 8-13.) To further bolster this position, petitioner points to the fact that the Union previously submitted a grievance with Pick Quick complaining that "meat supervisor [Colarusso] was observed performing bargaining unit work." (*Id.* at 4.) Specifically, the Union's grievance complained that Colarusso was assuming tasks outside the scope of his job title, namely, cutting meat in the meat department. (*Id.*) Because Pick Quick resolved this matter via settlement, paying hourly wages to a meat cutter employee, however, Pick Quick contends that the settlement confirms that Colarusso's status as a "meat supervisor" is excluded under the terms of the CBA.[1]

---

[1] The Court cannot speculate as to the reasons why respondent may have ultimately decided to settle with petitioner. Respondent notes, in connection with the grievance filed six years ago, that it never admitted that Colarusso was not a member of the bargaining unit; rather, the issue, according to respondent, was

In short, the question presented to this Court is the following: is it for the Court or the arbitrator to determine whether Colarusso, by virtue of his "meat supervisor" position, is exempt from the provisions of the CBA? For the following reasons, the Court concludes that this is an issue falling within the arbitrator's domain.

## III. DISCUSSION

### A. Legal Standard

The Second Circuit has repeatedly acknowledged that "federal policy strongly favors arbitration as an alternative dispute resolution process." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991). In light of this federal policy, the Second Circuit encourages courts to "construe arbitration clauses as broadly as possible," and to "compel arbitration *unless* it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (citation and internal quotation marks omitted). Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Threlkeld*, 923 F.2d at 248) (stating that although "parties may not be compelled to submit a [] dispute to arbitration unless they have contracted to do so, federal arbitration

---

that Colarusso allegedly was doing someone else's bargaining unit work. The Court does not believe that this prior grievance is somehow dispositive of the issue now before this Court. More importantly, however, and for the reasons set forth in detail *infra*, even if the settlement, in and of itself, solidifies Colarusso's supervisor status with Pick Quick, this is not conclusive because it is unclear from the language of the CBA whether a "meat supervisor" is exempted from its provisions, a question that is properly resolved by the arbitrator.

policy requires that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983))).

In determining whether a dispute should go to the courts or to the arbitrator, the law has offered the following guidance. Where the underlying issue concerns "whether a dispute between the parties is covered by the arbitration agreement[, that] is for the courts to decide." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983). Where a contract contains a broad arbitration clause, however, courts generally hold that "a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the [arbitration] clause." *Id.* at 64. Indeed, where a broad arbitration clause is in play, a presumption of arbitrability attaches, and "'in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (alteration in original) (quoting *Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-85 (1960)). When making its determination as to whether a case should proceed before the court or the arbitrator, "a court must be ever mindful of the strong national policy favoring arbitration of labor disputes." *Rochdale Vill., Inc. v. Public Serv. Emp. Union, et al.*, 605 F.2d 1290, 1294 (2d Cir. 1979).

### B. Application

The Court begins with the parties' agreement. *See Wilson v. Subway Sandwiches Shops, Inc.*, 823 F. Supp. 194, 198 (S.D.N.Y. 1993) (noting that "a court must first determine whether an agreement

to arbitrate exists and then decide whether the dispute before it arises under the agreement and is arbitrable"). There is no dispute here that both petitioner and respondent are parties to the CBA. There also is no dispute that the CBA contains an arbitration clause. Given its relevance to the issues presented, the Court sets forth the text in full:

> Should differences arise between the Union and its members and the Employer as to the interpretation, application or enforcement of any of the provisions of this Agreement, except differences which arise involving contributions to the Welfare, Pension, Annuity, Safety-Education-Cultural or Legal Funds, they shall be handled in the following manner. . . . [setting forth the steps of the arbitral process]

(Resp't's Aff. in Supp. of Mot. to Dismiss ("Resp't's Aff.") Ex. B.)

Of particular relevance to the Court's analysis here is the language, "[s]hould differences arise . . . as to the interpretation, application or enforcement of any of the provisions of this Agreement," the matter shall proceed through the arbitral process. (*Id.*) Given that this clause covers nearly any and all issues arising from the CBA, it is, most simply stated, broad. *See*, *e.g.*, *Pathmark, Inc. v. United Food and Commercial Workers Union, Local 342*, No. 08-cv-2217(JFB)(WDW), 2009 WL 2901623, at *4 (E.D.N.Y. Sept. 3, 2009) (concluding that arbitration provision, identical to that at issue in this case, was broad); *see also Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (finding arbitration clause, providing for arbitration of "any controversy or claim between [the parties] arising out of or relating to" the agreement, to be "a classically broad one");

*Collins*, 58 F.3d at 20 (holding that a clause "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause" (alterations in original)); *In re Winimo Realty Corp.*, 276 B.R. 334, 338 (S.D.N.Y. 2001) (concluding that clause stating "[a]ny controversy or claim arising out of or relating to this lease or the breach there of . . . shall be settled by arbitration" was a broad arbitration clause (citation and internal quotation marks omitted)).

Having concluded that the arbitration clause here is broad, a presumption of arbitrability attaches. *See Prudential Lines, Inc.*, 704 F.2d at 63-64. This presumption is not firmly affixed, however. Rather, the party resisting arbitration bears the burden of showing that the disputed issue should not proceed to arbitration. *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982-83 (2d Cir. 1997). The party may do so by showing that "an express provision in the collective bargaining agreement excludes the particular grievance from arbitration," or by presenting "forceful evidence of a purpose to exclude the claim from arbitration." *Id.* at 983.

Petitioner attempts to carry this burden by directing the Court to both Article I and Schedule A of the CBA. (*See* Pet'r Mem. at 7-9.) Specifically, petitioner argues that, because Colarusso is not a member of the collective bargaining unit, as defined in Article I and Schedule A, his employment – and its corresponding terms and conditions – are not governed by the CBA; thus, the CBA's right to arbitration is inapplicable to Colarusso.[2] (*Id.* at 8-9.) The Court will analyze this argument further.

---

[2] Petitioner also points to Article 2 of the CBA as dispositive which, similar to Schedule A, lists the

Petitioner does not contest that the parties have an agreement between them, nor does petitioner dispute that the agreement contains an arbitration clause. Instead, the core of its argument is that this provision does not apply to Colarusso because his supervisory status removes him from the CBA's scope. This is so, so petitioner's argument goes, because the CBA defines those employees whom its provisions encapsulate, namely, "employees in [Pick Quick's] stores [], engaged in the cutting, wrapping and selling of all fresh meat and smoked meat, poultry, fish and such products customarily handled in the Meat Department at retail in its retail stores or supermarkets *and* such additional classifications previously recognized by the Employer (as set forth in Schedule "A" herein), for the purpose of collective bargaining . . . ." (Pet'r's Opp'n Levine Aff. Ex. 1 (emphasis added).) Petitioner centers its attention upon Schedule A's classification of employees, which includes a meat department head, journeyman meat cutter, apprentice meat cutter, delicatessen seafood department head, weigher and wrapper delicatessen, and seafood clerks. (*See* Pet'r's Opp'n at 3; *see also* Pet'r's Opp'n Levine Aff. Ex. 1.) Petitioner asserts that, because "meat supervisor" is not included in this list of classifications, Colarusso, by virtue of his "meat

supervisor" title, is excluded from the CBA's provisions, including its arbitration requirement. (*See* Pet'r's Opp'n at 8-9 (stating that "Colarusso is not a member of the collective bargaining unit, which is defined in the collective bargaining agreement as to include meat department head, journeyman meat cutters, apprentice meat cutters, and seafood department heads, weighers and wrappers, and seafood clerks").)

Jumping from one logical step to the next, petitioner claims that if Colarusso is excluded from the CBA's terms, then he also is excluded from its arbitration provision; thus, any dispute concerning his employment must proceed before this Court and cannot possibly go before an arbitrator. (*Id.*)

Respondent casts a different light upon the same contractual agreement. Respondent asks the Court to focus not on Schedule A's classification of employees, but rather, on Colarusso's status as a Union member,[3] an

---

"Classification of Employees" for those employees of Pick Quick; these classifications include meat department head, journeyman meat cutters, apprentice meat cutters, and seafood department heads, weighers and wrappers, and seafood clerks. However, respondent notes Article I's language, which specifically states that anyone who is "engaged in the cutting, wrapping and selling of all fresh and smoked meat, poultry, fish and such products customarily handled in the meat department" are part of the bargaining unit. Respondent asserts that Colarusso is an undisputed employee of Pick Quick and is involved in selling meat; he therefore is part of the bargaining unit.

[3] Although respondent asserts that "[t]here is no dispute that [Colarusso] is a Union member," petitioner contends this is not accurate. (Resp't Mem. at 6.) Petitioner takes the position that, although Colarusso may have been receiving benefits out of the Union's multi-employer fund, this does not make him a Union member *per se*. (*See* Pet'r's Opp'n at 5 (stating that "Colarusso is only a member of [the Union] in connection with his being able to receive pension and welfare benefits out of the [Union's] multi-employer funds, which was done at the request of [Colarusso] and [the Union]" (citing Levine Aff. ¶ 9)).) Petitioner further notes that Colarusso had been promoted out of his bargaining unit position in the meat department when he received the position of "meat supervisor," and the receipt of any employee benefits out of the Union's fund was not due to any ongoing member status in the Union. (*Id.* at 3-5; *see also id.* at 5-6 (stating that "being a union member . . ., or participation in [the Union's] benefit and pension plans does not indicate that an individual is a bargaining unit employee whose terms and conditions of employment are governed by the

employee of petitioner, and the fact that Colarusso's underlying claim concerns issues regarding his employment with petitioner that are addressed under the CBA. (*See* Resp't Mem. at 6-7.) Respondent then points to the broad language of the arbitration clause, which clearly states that where "differences arise between the Union and its members and the Employer as to the interpretation, application or enforcement of any of the provisions of this Agreement," the case may proceed to arbitration, unless the difference concerns "contributions to the Welfare, Pension, Annuity, Safety-Education-Cultural or Legal Funds . . . ." (Resp't's Aff. Ex. B.) This case is about a difference between a Union member, Colarusso, and his employer, Pick Quick; it concerns provisions of the CBA; and it does not involve matters involving contributions to welfare, pension, annuity, safety-education-cultural or legal funds. (Resp't Mem. at 6-7, 8.) Thus, respondent argues that the underlying claim may proceed to arbitration. (*Id.*)

In addition to their differing viewpoints as to how the CBA should be read, the parties diverge on another critical point: who should be deciding whether Colarusso is subject to the terms of the CBA? Respondent says the arbitrator; petitioner says the Court.

As to this point, the Court notes that, in many ways, the parties are arguing past one another. Petitioner contends that the Court must simply look at the parties' agreement, and pursuant to its terms, supervisors are excluded; thus, the Court need not debate whether the judge or the arbitrator is the most appropriate arbiter here, given that the plain language of the CBA removes Colarusso from the ambit of its arbitration provision. Respondent, in turn, argues that it is first whether Colarusso constitutes a beneficiary (by virtue of his supervisor status) under the CBA, and next, whether the Court or the arbitrator should determine whether his supervisory status excludes him from the CBA. For the following reasons, the Court concludes that this is an area properly left to the arbitrator's domain.

To begin with, the Court concludes that petitioner's "meat supervisor"-exclusion arguments – based upon the provisions of the CBA and the facts of this case – are not so clear and indisputable that the presumption of arbitration is eliminated. In its supplemental letter submitted following oral argument, petitioner cites several cases to the Court which it contends support the conclusion that the Court should determine whether Colarusso is covered by the CBA, and correspondingly, whether Pick Quick can be compelled to arbitrate the underlying dispute. (*See* Pet'r Letter of June 25, 2013.) However, the cases to which petitioner directs the Court are distinguishable from the facts and circumstances of this case.

For instance, petitioner cites *United Steelworkers of Am., Local No. 1617 v. General Fireproofing Co.*, 464 F.2d 726 (6th Cir. 1972) and *Allied Oil Workers Union v. Ethyl Corp.*, 602 F. Supp. 555 (M.D. La. 1984), for the proposition that this Court can decide whether alleged supervisor Colarusso is covered under the CBA. However, in each of those cases, the CBA's language was far more explicit than that at issue here. That is, in each case, the CBA expressly made clear that supervisors were not considered employees within the meaning of the agreement, and accordingly, were not subject to its terms and provisions. In *Allied Oil*, the collective bargaining agreement defined an employee as:

collective bargaining agreement between an employer and union").)

Unless the language otherwise clearly indicates, the term "employees," as used herein, means any or all and only those employees of the [Company] included within the unit appropriate for collective bargaining purposes as defined in the first paragraph of this Agreement.

602 F. Supp. at 558.

The first paragraph of the Agreement in *Allied Oil* stated that "[this extended agreement] . . . between ETHYL CORPORATION, a corporation, . . . and the ALLIED OIL WORKERS UNION, . . . which *excludes* office, clerical, professional and *all supervisory employees* with the right to hire, promote, discharge, discipline or otherwise effect changes in the status of employees or effectively recommend such action." *Id.* at 558-59. Based on this provision, the district court concluded that "it is clear that the contract *specifically exempts supervisors* from the term or definition of employees as that term is used in the collective bargaining agreement." *Id.* at 559. Additionally, the Court noted another section of the agreement, which stated that "[s]*upervisory positions* above the rank of the highest classification of each department *shall not be subject to the terms and conditions of this Agreement* . . . ." *Id.* at 559 n.15. The parties have pointed to no such language in the CBA at issue here.

Similarly, in *United Steelworkers*, the collective bargaining agreement, while containing a similar arbitration clause as to that at issue here, also expressly excluded supervisors from those employees who were subject to the agreement's terms. As to arbitration, the collective bargaining agreement stated, "[should] any dispute or disagreement arise *between an employee and the Company* as to the meaning and application of the provisions of this Agreement . . ." such dispute shall proceed to arbitration, 464 F.2d at 728; as to those employees covered under the agreement, it provided that, "[as] used herein the term 'employee' includes all production and maintenance employees of the Company . . . *and excludes supervisors* . . . ." *Id.* at 727 (emphasis added). There being no dispute as to the grievant's supervisory status, the court, faced with the question of whether the dispute should or should not proceed to arbitration, simply had to examine the plain language of the agreement. In doing so, it concluded that "the plain meaning of these provisions is that the Company has agreed to process any and all disputes involving its 'employees' through the grievance procedures (including arbitration), but that disputes concerning supervisory personnel are not included." *Id.* at 729; *see also id.* (stating that "by its terms [the agreement] does not impose upon the Company any duty to arbitrate a dispute concerning discharge of a supervisor").

Such clear exclusionary language, however, is not present in this case. Petitioner contends that it is because Schedule A, listing those "additional classifications" of employees to which the CBA applies, does not list "meat supervisor," and therefore, has obviously excluded such position from the agreement's provisions.

True, Schedule A does not explicitly list "meat supervisor." However, Article I, which incorporates Schedule A's additional classifications, nowhere states that any such positions not included in Schedule A's list are, by virtue of their absence, completely excluded from the CBA's coverage. Stated differently, the Court is not convinced that the *only* logical inference to be drawn from Schedule A's "meat supervisor-less" classifications is that Pick Quick has chosen

to exclude any and all such supervisors from the CBA's terms.

This is particularly relevant given that Schedule A's listing of employee positions covered under the CBA is not the only part of the CBA that defines those employees covered under its provisions. Indeed, Article I not only points to "such additional classifications previously recognized by the Employer (as set forth in Schedule "A" [])," but it also references Pick Quick's "employees in its stores herein, engaged in the cutting, wrapping and selling of all fresh and smoked meat, poultry, fish and such products customarily handled in the Meat Department at retail in its retail stores or supermarkets." (Pet'r's Opp'n Levine Aff., Ex. 1.) Petitioner does not dispute that Colarusso is one of its employees employed in its meat department. Thus, it is confusing to the Court why this factor should not, at the very least – in the absence of any explicit exclusionary language indicating otherwise – support the conclusion that Colarusso arguably may be covered under the CBA.

A review of the cases to which petitioner directs the Court offers little additional clarity. In all such cases, there was clear language indicating that supervisors – or whatever the respective employee's position was at issue in the case – were not subject to a collective bargaining agreement's terms. *See, e.g., Int'l Bhd. of Elec. Workers, AFL-CIO, Local 1 v. GKN Aerospace N. Am., Inc.*, 431 F.3d 624, 629 (8th Cir. 2005) (concluding that alleged grievance could not be subject to arbitration because under collective bargaining agreement's plain language, grievant did not constitute an employee covered under the agreement as the agreement limited its terms to employees "who on or after its effective date [of January 1, 2001] accepts a supervisory position"; plaintiff had held a supervisory

role since 1998, and accepted a supervisory position in 2000, thus predating the scope of the agreement's provisions); *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 983-84 (2d Cir. 1997) (although collective bargaining agreement contained a broad arbitration provision, court noted that the clause was expressly limited by a provision that "excludes from coverage under the agreement 'employees employed by cleaning and maintenance contractors,' except to the extent that such employees are covered by the provisions of Article II of the Agreement," and that under Article II's language, the employees were clearly excluded from the agreement's arbitration provision); *Gen. Tel. Co. of Cal. v. Commc'ns Workers of Am.*, 402 F.2d 255, 256, 256 (9th Cir. 1968) (holding that dispute could not be submitted to arbitration because "agreement to arbitrate did not include disciplinary procedures against a supervisory employee for acts after he became part of management," and at least one of the reasons for contested discharge fell into this exclusion category).

Additionally, the Court's position here is not in conflict with these courts' decisions. In all such cases, the courts agree that it is the role of the court to determine whether the parties are bound to arbitrate (and if so, to what extent), and what issues are in fact arbitrable. That is precisely what the Court is now doing. In doing so, it concludes that: there is a broad arbitration agreement between the parties, triggering a presumption of arbitrability; that the current dispute – whether Colarusso's alleged supervisory status removes him from the scope of the CBA's provisions – falls within the arbitration clause's ambit, *i.e.*, "[d]ifferences . . . as to the interpretation, application or enforcement of any of the provisions of [the CBA]"; and that no exclusionary language or other evidence shows that Colarusso's particular grievance

is clearly excluded from arbitration, as the CBA does not explicitly exclude him from its purview.

In making such a determination, the Court remains mindful of the Second Circuit's encouragement to "construe arbitration clauses as broadly as possible," to "compel arbitration *unless* it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *Collins*, 58 F.3d at 19 (emphasis added) (citation and internal quotation marks omitted), and that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,'" *Threlkeld*, 923 F.2d at 248 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25). When these principles are examined in the context of this case, it is clear that these issues should be resolved by the arbitrator.

First, construing the arbitration provision broadly, the underlying dispute – contesting entitlements and benefits available to Colarusso by virtue of his Union-member status – triggers, at least on its face, the scope of the arbitration provision, which applies to "[d]ifferences [that] arise between the Union and its members and the Employer as to the interpretation, application or enforcement of any of the provisions of this Agreement." (*See* Resp't's Aff. Ex. B.) The Union does not contest Colarusso's Union membership status. Further, petitioner does not dispute that Colarusso was receiving certain employee benefits out of the Union's fund. (*See* Pet'r's Opp'n at 3-6, 9.) Thus, petitioner's argument, in sum, is that Colarusso does not constitute a bargaining-unit employee under the CBA; non-bargaining-unit employees may still participate in the Union's benefit plans; therefore, the fact that Colarusso receives certain benefits is not indicative of his bargaining-unit-employee status. (*See id.*

at 9 (stating that "Colarusso's participation in various union benefit plans is irrelevant"); *id.* at 10 (stating that "employees of the Union, and thus not bargaining-unit employees of the employer, may also participate in the union multi-employer benefit plans"); *id.* at 11 (stating that "former bargaining unit members who are still employed by the employer, such as Meat Supervisor Mr. Colarusso, may participate in union benefit plans").)

Although petitioner challenges whether Colarusso's receiving of Union benefits makes him a true member of the collective bargaining unit, and thereby subject to the CBA's provisions, the Court need not resolve this issue. Because the CBA's arbitration provision is broad, and because no exclusionary language or other evidence indicates that Colarusso is excluded from the CBA's provisions, the Court need not reach the merits of Colarusso's collective-bargaining-unit-employee status or those benefits/entitlements to which he may or may not be entitled; these issues ultimately will be for the arbitrator to decide.[4]

Second, the Court is not convinced that the arbitration provision is incapable of an interpretation that covers the present dispute.

_____

[4] In its letter submitted following oral argument, respondent further highlighted a point that it emphasized during oral argument, namely, that Colarusso does not constitute a "supervisor" as defined by the National Labor Relations Act, a point to which petitioner never offered a response, either at oral argument or in its subsequent submission to the Court. (*See* Pet'r Letter of June 28, 2013.) Under the facts presently before the Court, it is not clear whether Colarusso's alleged supervisory status removes him from, or still entitles him to, the benefits available under the CBA, regardless of whether the term "supervisor" is read according to petitioner's understanding or the National Labor Relations Act's understanding of the term. Accordingly, for reasons set forth both *supra* and *infra*, the Court determines that arbitration is appropriate.

*See McAllister Bros. Inc. v. A&S Transp. Co.*, 621 F.2d 519, 522 (2d Cir. 1980) (stating that a court may not "compel arbitration *unless* it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (emphasis added)). Upon broadly construing the arbitration clause here, the Court reads it as plausibly extending to cover Colarusso and his underlying claim. That is, the Court reads the CBA as possibly extending to Colarusso's "meat supervisor," Pick-Quick-employee status, and its arbitration clause, as potentially encapsulating his claim to coverage by virtue of his employee status. Because the Court cannot say with "positive assurance" that the underlying arbitration clause "is *not* susceptible of an interpretation that covers the asserted dispute," arbitration is appropriate. *Id.*

Lastly, the law is clear that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Threlkeld*, 923 F.2d at 248 (citation and internal quotation marks omitted). Is it crystal clear to the Court that Colarusso constitutes an employee under the CBA's terms? It is not. Is it beyond certain that Colarusso, and correspondingly, his claim, is excluded from the terms of the CBA? Again, it is not. *Cf. Peerless Pressed Metal Corp. v. Int'l Union of Elec. Radio and Mach. Workers, AFL-CIO*, 451 F.2d 19, 21 (1st Cir. 1971) (in case involving issue of whether arbitration was plainly barred by bargaining agreement's inclusion of "employees" and exclusion of "supervisors," court stated that "[w]hile the construction of the agreement which would confer employee status for the purposes of [the agreement's employee coverage provision, clarifying those eligible for arbitration] on one who seeks to exercise seniority rights is weak, we cannot conclude that it is impossible," and therefore, arbitration was

deemed appropriate because the grievant "arguably possesses certain rights which have accrued to him, *qua* employee, under the collective bargaining agreement"). The essence of the Court's inquiry here is whether the CBA is "suspectible of an interpretation that covers" the grievance at issue. It is not clear to the Court whether or not a "meat supervisor" is covered under or excluded from the provisions of the CBA. In light of this, the Court resolves all pending doubts in favor of arbitration and concludes that the arbitrator is the appropriate arbiter of the underlying dispute.

This Court's decision is consistent with the decision in *The Players v. Local 6 of Hotel, Restaurant & Club Employees and Bartenders Union*, No. 92 CIV. 0202 (JSM), 1992 WL 80628 (S.D.N.Y. Apr. 3, 1992). The facts in *The Players* were nearly identical to those at issue here – that is, the grievant was a dues paying member and the parties were bound by a collective bargaining agreement with a broad arbitration provisions. However, the employer argued that the grievant was a supervisor and, thus, was not a beneficiary of the collective barging agreement. *Id.* at *3. The Court disagreed with the employer and held that that the issue of whether the union member was a supervisor and whether his supervisory status caused him to be exempt from the Collective Bargaining Agreement should be determined by the arbitrator. *Id.* Specifically, the Court explained:

> [T]he Club maintains that Mr. Scalabrino was a supervisor and, as such, cannot invoke the collective bargaining agreement or its arbitration provision. However, in light of the liberal construction given arbitration clauses in this jurisdiction, the issues of whether Mr. Scalabrino was a supervisor and

whether this supervisory status caused him to be exempt from the collective bargaining agreement should first be presented to an arbitrator. *Cf. Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 891 (2d Cir. 1982) (affirming decision of arbitrator that employee was not a supervisor, thus subjecting discharge to arbitration). These issues of contract interpretation that can be adjudicated at arbitration, the method agreed to by the parties.

*Id*. Thus, the district court denied the employer's motion to stay arbitration, and granted the union's motion to dismiss the complaint and compel arbitration. *Id.*

In sum, the Court concludes, under the circumstances of this case, that the arbitrator, and not the Court, should determine whether Colarusso is a "supervisor" and, if so, whether his supervisory status causes him to be exempt from the collective bargaining agreement. In other words, under the broad arbitration clause, whether or not Colarusso is part of the bargaining unit is for an arbitrator to decide based upon the collective bargaining agreement and the facts of the case because it goes to the merits and not whether the matter should proceed to arbitration. Accordingly, the Court vacates the stay of arbitration, and orders that the parties proceed to arbitration.

## C.  Staying the Litigation

The remaining issue is whether the litigation should be stayed or dismissed pending arbitration. In its motion papers, respondent argues that the case should be dismissed because all issues in the dispute are subject to arbitration. At oral argument respondent indicated that, in the alternative,

it requests a stay of the action. Petitioner also indicated at oral argument that it would like the action stayed.  Pursuant to Section 3 of the Federal Arbitration Act ("FAA"),

> the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. The district court may exercise its discretion to stay the proceeding or may conclude that the litigation should be dismissed. *See Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 92-93 (2d Cir. 2002). A decision to dismiss has implications for the speed with which the arbitration of the dispute may begin because a dismissal is reviewable by an appellate court under Section 16(a)(3) of the FAA; a stay, however, is an unappealable interlocutory order under Section 16(b) of the FAA. *Id*. at 93. Staying the action is, therefore, more likely to allow the matter to proceed to arbitration in an expeditious manner. *Id*. The Second Circuit urges courts deciding whether to dismiss or stay litigation when referring a matter to arbitration to "be mindful of this liberal federal policy favoring arbitration agreements" and consider that "[u]nnecessary delay of the arbitral process through appellate review is disfavored." *Id*. (citation and quotation marks omitted).

The Court concludes that a stay is appropriate in this case.  As an initial matter, during oral argument respondent requested, in the alternative to a dismissal, a stay; petitioner also requested a stay, rather than

dismissal. This Court recognizes that some courts have held that where "none of plaintiff's claims remains to be resolved by this court, . . . there is no reason to stay – rather than dismiss – this action." *Mahant v. Lehman Bros.*, No. 99 Civ. 4421(MBM), 2000 WL 1738399, at *3 (S.D.N.Y. Nov. 22, 2000); *see also Mazza Consulting Grp., Inc. v. Canam Steel Corp.*, No. 08-CV-38 (NGG), 2008 WL 1809313, at *3-7 (E.D.N.Y. Apr. 21, 2008); *Perry v. N.Y. Law Sch.*, No. 03 Civ. 9221(GBH), 2004 WL 1698622, at *4 (S.D.N.Y. July 28, 2004). However, in the case at hand, the Court believes that the more appropriate action is to stay the proceedings and to compel arbitration in order to promote expeditious resolution of this dispute. *See Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." (citation and internal quotation marks omitted)); *see also Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").

IV. CONCLUSION

For the reasons set forth herein, the Court grants respondent's motion to vacate the stay of arbitration and to compel arbitration. The Court will not make any determination on the pending motion to dismiss until the case has proceeded through arbitration. Accordingly, the parties are ordered to proceed to the CBA-governed arbitration process. This action is stayed pending the outcome of the arbitration.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: July 10, 2013
Central Islip, NY

\* \* \*

Pick Quick Foods, Inc. is represented by Douglas Peter Catalano of Fulbright & Jaworski, LLP, 666 Fifth Avenue, New York, NY 10103. United Food and Commercial Workers, Local 342 is represented by Ira D. Wincott of the Law Office of Ira D. Wincott, 166 East Jericho Turnpike, Mineola, NY 11501.